Scruggs-Vandervoort-Barney, Inc., a Corporation, v. Commissioner. Scruggs-Vandervoort-Barney Dry Goods Company, formerly a corporation, A. L. Shapleigh, J. H. Denny, Clarence H. King, Robert A. Bagnell, F. M. Mayfield, Oliver Anderson, G. A. Buder, H. W. Schacter, E. D. Nims and Dr. William D. Gordon, Trustees of Scruggs-Vandervoort-Barney Dry Goods Company, formerly a corporation, v. Commissioner. Scruggs-Vandervoort-Barney, Inc., a Corporation, transferee and successor of Scruggs-Vandervoort-Barney Dry Goods Company v. Commissioner.
Scruggs-Vandervoort-Barney, Inc. v. Commissioner
Docket Nos. 106049, 106050, 107213.
United States Tax Court
1942 Tax Ct. Memo LEXIS 69; 1 T.C.M. (CCH) 115; T.C.M. (RIA) 42619; November 27, 1942
*69 Gustavus A. Buder, Jr., Esq., 500 Buder Bldg., St. Louis, Mo., and Erik C. Boye, C.P.A., 208 N. Broadway, St. Louis, Mo., for the petitioners. John E. Marshall, Esq., for the respondent. TURNER
Memorandum Findings of Fact and Opinion TURNER, J.: The Commissioner determined deficiencies in income taxes as follows for the indicated years: Docket
Year
No.
Ended
Deficiency
Scruggs-
Vandervoort-
Barney, Inc.
106049
July 31, 1937
$47,711.38
July 31, 1938
1,168.51
Scruggs-
Vandervoort-
Barney Dry
Goods Com-
pany
106050
July 31, 1937
66,950.49
The Commissioner has also determined that Scruggs-Vandervoort-Barney, Inc., petitioner in Docket No. 107213, is liable as transferee for the deficiency determined against Scruggs-Vandervoort-Barney Dry Goods Company for the fiscal year ended July 31, 1937. The issues not settled by stipulation of the parties are (1) whether the net income of $209,394 of Scruggs-Vandervoort-Barney Dry Goods Company resulting from its operations from August 1, 1936, through January 31, 1937, is taxable to it or to Scruggs-Vandervoort-Barney, Inc., and (2) whether for the purpose of the surtax on undistributed net income the petitioners *70 are entitled to certain credits because of a contract restricting the payment of dividends. Findings of Fact Certain of the facts were stipulated and are found as stipulated. The petitioners filed their income tax returns for the years in controversy with the collector for the First Collection District of Missouri. Scruggs - Vandervoort - Barney Dry Goods Company, sometimes referred to herein as the old corporation, was organized on June 15, 1906, as a Missouri corporation under the name of United Dry Goods Company for a term of 50 years. By amendment to its charter the name was changed from United Dry Goods Company on June 18, 1906. Thereafter on June 29, 1915, March 12, 1924, October 7, 1925 and November 21, 1933, other amendments were made providing for an increased number of directors, an increased capital stock and an extension and enlargement of the business purposes of the corporation. It operated a retail department store in St. Louis and kept its books and filed its income tax returns on the basis of a fiscal year ending July 31. On November 16, 1936, the president of Scruggs-Vandervoort-Barney Dry Goods Company circularized its stockholders outlining a plan of reorganization *71 and transmitted to them a copy of the plan and notice that a special meeting of the stockholders would be held on January 15, 1937, for the purpose of taking such action as the stockholders deemed advisable. The corporation had an operating deficit of $1,743,248.61 and as of July 1, 1936, there were accumulated and unpaid dividends on its first preferred stock amounting to $33 per share and on its second preferred stock amounting to $38.50 per share. The purpose sought to be accomplished by the reorganization was the elimination of the operating deficit and the dividend arrearages on the two classes of preferred stock. The capital stock outstanding consisted of 12,455 shares of 6 percent cumulative first preferred stock, 10,192.25 shares of 7 percent cumulative second preferred stock, and 163,788 shares of common stock having a par value of $25 per share. There were also outstanding 7 percent collateral gold notes maturing March 1, 1943, in the principal amount of $1,461,000. It was proposed that a new corporation be organized with authorized capital stock consisting of 12,500 shares of 6 percent cumulative first preferred, 10,200 shares of 7 percent cumulative second preferred, 7,600 *72 shares of 3 1/2 percent cumulative preference stock all having a par value of $100 per share and 164,000 shares of common stock having a par value of $5 per share. The old corporation was to transfer all of its assets as a going concern to the new corporation and the new corporation in consideration of said transfer and in addition to its assumption of any and all liabilities of the old corporation was to issue to the old corporation 12,455 shares of its 6 percent cumulative first preferred stock, 10,192 shares of its 7 percent cumulative second preferred stock, 7,549 shares of its 3 1/2 percent cumulative preference stock and the entire 164,000 shares of its common stock. Holders of the first and second preferred stock of the old corporation were to relinquish their claims to all dividends accumulated and unpaid on such stocks to January 1, 1937, and upon such relinquishment the old corporation was to be dissolved and the stock of the new corporation which had been received in exchange for its assets was to be distributed to the said stockholders at the rate of one share of 6 percent cumulative first preferred stock of the new corporation for each share of 6 percent cumulative first *73 preferred stock of the old corporation and in addition one share of the 3 1/2 percent cumulative preference stock for each three shares of the old cumulative first preferred stock; one share of 7 percent cumulative second preferred stock of the new corporation for each share of 7 percent cumulative second preferred stock of the old corporation plus one share of the new 3 1/2 percent cumulative preference stock for each three shares of old cumulative second preferred stock; while each holder of a share of $25 par value common stock of the old corporation was to receive therefor one share of the $5 par value common stock in the new corporation. It was provided that the books of the new corporation should reflect the change in the par value of the common stock and any balance of assets of the new corporation over and above its liabilities including capital stock was to be carried as capital surplus. The meeting of the stockholders called for January 15, 1937, was adjourned to January 26, 1937, and on that date a resolution to reorganize the old corporation according to the plan was adopted. The plan became operative on February 1, 1937, and was consummated according to its terms. The *74 new corporation Scruggs-Vandervoort-Barney, Inc., sometimes referred to as the new corporation, was organized under the laws of Missouri on February 1, 1937, and its existence under its charter was to be perpetual. Its business purposes were the same as those of the old corporation. The authorized capital of the old corporation was $7,250,000 while that of the new corporation was $3,850,000. The purposes sought to be accomplished by reorganization were accomplished and the holders of stock in the new corporation soon began to receive dividends. The old corporation was dissolved by court decree on March 1, 1937. The reorganization caused no interruption in the operation of the retail department store and no change in value of the merchandise inventory. The assets of the old corporation were transferred to the new corporation without any change of book values except that appreciation in the value of fixed assets on the books of the old corporation was eliminated. The new corporation keeps its books and files its income tax returns on the basis of a fiscal year ending July 31. The net income from operations of the old corporation for the six-month period August 1, 1936, to February *75 1, 1937, was $209,394. In its income tax return for the fiscal year ended July 1, 1937, filed on October 16, 1937, the new corporation included without segregation the items of income and deductions pertaining to the operations of the old corporation from August 1, 1936, to February 1, 1937. On December 12, 1939, an income tax return was filed for the old corporation for the fiscal year ended July 31, 1937. In this return it was stated that the net income of $209,394 reflected therein was transferred to the new corporation and had been included by it in its income tax return. In determining the deficiency against the old corporation for the fiscal year ended July 31, 1937, and in determining the liability of the new corporation as transferee of the assets of the old corporation the respondent treated the aforesaid net income of $209,394 as taxable to the old corporation. In determining the deficiency against the new corporation for the fiscal year ended July 31, 1937, however, the respondent did not exclude said amount from its income. In 1933 the old corporation had outstanding and unpaid $1,725,000 in principal amount of 7 percent serial gold notes dated March 1, 1924, maturing *76 serially and in varying amounts until March 1, 1939. It desired an extension of the time of payment of its notes until March 1, 1943, and on April 15, 1933, a collateral trust agreement providing such an extension was extended by the old corporation and the trustee. Under this agreement the old corporation issued its 7 percent collateral gold notes maturing on March 1, 1943. It was provided that beginning on November 1, 1933, and for the fiscal year ended July 31, 1933, and for each such fiscal year thereafter the old corporation should on November 1 pay to the trustee as a sinking fund to be applied to the purchase or redemption of such notes a sum equivalent to 50 percent of its and its subsidiaries net income as indicated by a consolidated income statement; provided, however, that the said sum to be paid should in no event exceed the sum of $200,000 in any one year. It was also provided that all of the covenants, stipulations, promises, agreements and provisions of the collateral trust agreement should bind the successor, legal representatives, and assigns of the old corporation. The contract contained no provision requiring the payment from or the setting aside of the earnings *77 within the taxable year. Among the liabilities of the old corporation assumed by the new corporation under the re-organization which occurred on February 1, 1937, were the 7 percent collateral gold notes maturing March 1, 1943. The principal amount of such notes outstanding on February 1, 1937, was $1,300,500. Pursuant to the terms of the collateral trust agreement payments were made into a special deposit account at the Mercantile Commerce Bank and Trust Company, formerly Mercantile Trust Company, on the dates and in the amounts as follows: Date
Amount
November 2, 1936
$200,000.00
November 1, 1937
200,000.00
October 31, 1938
126,127.55
It was the practice of the old corporation and is a practice of the new corporation to begin taking inventories about ten days before the close of the period and usually it is about ten days after the close of the period before the true inventory figure is determined. An audit is made by an outside auditor whose reports are never completed before the latter part of September or the first of October. In its income tax return for the fiscal year ended July 31, 1937, the old corporation did not report any tax liability and did not claim *78 a credit under any contract restricting the payment of dividends. No such credit was allowed by the respondent in determining the deficiencies against the old corporation for that year or in determining the liability of the new corporation as transferee of the assets of the old corporation for the deficiency for that year. In its returns for the fiscal years ended July 31, 1937, and July 31, 1938, the new corporation claimed $200,000 and $126,127.55, respectively, as credits under contracts restricting dividend payments. In determining the deficiencies against the new corporation for said years the respondent disallowed the credits thus claimed. The new corporation admits that it is a transferee of the old corporation and that the value of the assets transferred to it by the old corporation is far in excess of the transferee liability asserted against it by the respondent. Opinion The parties are in agreement that the income from the operations of the old corporation for the period from August 1, 1936, to February 1, 1937, is not taxable to both the old and the new corporations, as the respondent determined, but only to one of them. The petitioners contend, however, that the two *79 corporations constitute a single taxable entity; that the new corporation properly reported as its income the income of the old corporation for the period from August 1, 1936, to February 1, 1937; that the old corporation is not separately liable for the income tax thereon; and that the new corporation is not liable as transferee of the old corporation for tax on such income. Petitioners to support their contention that the new corporation is the same corporate entity as the old corporation under the laws of Missouri and the same taxable entity under the Revenue Act of 1936, rely upon certain statements taken from the opinion of the Supreme Court in , and on the Missouri decisions in ; ; . The taxes involved in this issue are imposed by the Revenue Act of 1936 upon the "net income of every *80 corporation" and the facts in these proccedings clearly demonstrate that the old and the new corporations were intended to be and were organized as two separate and distinct corporations, and being separate and distinct, the income of one corporation may not be taxed as the income of the other. See and compare New Colonial Ice Co., Inc. v. ; ; ; . We do not have here a case of merger or consolidation under the laws of Missouri but a case of one corporation acquiring by purchase or exchange the assets of another and , is not in any way authority for the proposition for which the petitioners contend. Similarly the Missouri cases relied upon are not in point and are not authority for the conclusion sought. The tax on the income of the old corporation *81 for the period in question is that of the old corporation and not that of the new. The liability of the new corporation in respect thereto is that of transferee and not that of taxpayer. The remaining issue is whether or not the petitioners, or either of them, are entitled in computing the tax on undistributed profits to credit, under section 26(c) (2) of the Revenue Act of 1936, for the payments made under the agreement of April 15, 1933, to the trustee as a sinking fund to be applied to the purchase or redemption of the 7 percent collateral gold notes. The contract in question contained no provision requiring the actual payment from or the setting aside of earnings within the taxable year to or for such sinking fund. Since the submission of this case the Supreme Court has decided the case of , holding that the absence of such provisions from a contract dealing with the disposition of earnings and profits and providing for their payment or setting aside for the discharge of debt is fatal to the claim for credit under section 26(c) (2) in respect of such earnings, even though actually paid or set *82 aside within the taxable year. The claim of the petitioners for credit herein is accordingly denied. Decision will be entered under Rule 50.